## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARK TWARDZIK, on behalf of himself and all others similarly situated,<br><br>            Plaintiffs,<br><br>    v.<br><br>HP INC., and NVIDIA CORPORATION,<br><br>            Defendants. | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT

Plaintiff Mark Twardzik ("Plaintiff") by and through his undersigned counsel, brings this action against HP Inc. ("HP") and NVIDIA Corporation ("NVIDIA," and together with HP, the "Defendants") for rescission, monetary damages, and injunctive and declaratory relief. Plaintiff alleges the following based on personal knowledge as to his own acts and the investigation conducted by counsel as to all other allegations:

### <u>NATURE OF THE ACTION</u>

1.     Plaintiff brings this action on behalf of himself and other similarly-situated consumers across the country who purchased an HP laptop computer containing the slowed variant of the NVIDIA GeForce MX150 graphics processor unit detailed herein (the "Class Laptops").

2.     The HP Envy 13 is an "ultrabook" laptop, so-called due to its small size and allegedly high performance. HP also sells Envy laptops with similar specifications in larger sizes.

3.     The NVIDIA GeForce MX150 (the "MX150") is a graphics card. The most important part of the graphics card, i.e., the "brain" of the card, is the graphics processing unit ("GPU").

4.     A GPU's purpose is to receive visual data from the computer's central processing unit ("CPU"), process those data into images, and transmit those images to the computer's monitor for display to the user. All else being equal, "[t]he more sophisticated the GPU, the higher the resolution and the faster and smoother the motion in games and movies." *Definition of: GPU*, PCMag.com, *available at* https://www.pcmag.com/encyclopedia/term/43886/gpu (last accessed July 20, 2019). A fast GPU generally improves user experience by speeding up graphics processing, and a powerful GPU is critical to certain graphics-intensive computer uses such as running video games and virtual reality software, photo- and video-editing software, three-dimensional modeling, and video and image processing. "A good graphics card is the most important part of a gaming PC." Jon Martindale, *The best graphics cards for 2019*, DigitalTrends.com (July 15, 2019), https://www.digitaltrends.com/computing/best-graphics-cards/.

5.     Conversely, an underpowered GPU can negatively impact the user experience by reducing render speed, display quality, and operating stability. When a GPU is insufficiently powerful to handle a graphics processing task, it can cause visual anomalies such as artifacts, flickering images, and screen stuttering. GPU output may lag, reducing the framerate and reducing responsiveness to user input, or the GPU may even crash. The reduced frame rate, stuttering, and lag caused by an underpowered GPU can render a video game or other graphics-intensive program unusable.

6.     Many original equipment manufacturers ("OEMs") incorporate the MX150 into their laptops (or offer it as an optional upgrade), and there are dozens of laptop models containing the MX150.

7.    NVIDIA released the MX150 in May 2017. A month later, HP released a version of the Envy 13 incorporating the MX150.

8.    NVIDIA marketed the MX150 as a single hardware component with uniform performance specifications, when in fact, there were two variants of the MX150: one that performed at the advertised specifications (the "Standard MX150"), and another that performed substantially worse (the "Slowed MX150").

9.    Beginning in June 2017, HP gave customers purchasing Envy laptops the option to upgrade from the machine's base GPU by adding the MX150. Customers who purchased the larger models of the Envy received the Standard MX150, while customers who purchased the smaller Envy 13 received the Slowed MX150.

10.    Both HP and NVIDIA knew that the Slowed MX150 was materially inferior to the Standard MX150, but neither company differentiated between the two variants in marketing materials.

11.    NVIDIA similarly misrepresented the speed and performance boost offered by the MX150, claiming that in comparison with its predecessor, the GeForce 940MX, it offered "up to 3x superior performance-per-Watt" and approximately 33 percent better performance in various computing activities. Andrew Burnes, *Introducing GeForce MX150 Laptops: Supercharged For Work and Play*, NVIDIA.com (May 25, 2017), https://www.NVIDIA.com/en-us/geforce/news/NVIDIA-geforce-mx150-laptops//. On its website, NVIDIA claims that the "MX150 supercharges your laptop for work and play. Get up to 4X faster performance over integrated graphics for photo and video-editing applications, as well as faster, smoother gaming." *GeForce® MX150 Dedicated Graphics for Laptops*, GeForce.com, *available at* https://www.geforce.com/hardware/notebook-gpus/geforce-mx150 (last accessed July 20, 2019).

12.     HP did not disclose to purchasers of the Class Laptops that they contained a GPU that was materially inferior to the larger Envy models. Instead, HP fully adopted NVIDIA's misleading uniform branding of the MX150.

13.     HP marketed the Class Laptops as being "exceptionally powerful," with "[i]ncredible speed," and claimed that "the latest Intel® Core™ i processor[2] (optional NVIDIA® GeForce® MX150 graphics) combine for unbridled performance that overpowers even the most demanding tasks." *HP ENVY - 13-ad173cl (1KT13UA) Datasheet*, *available at* https://pcb.itcs.hp.com/dc/api/spec-sheet/ww-en/18021530/pdf/1KT13UA.pdf (last accessed July 20, 2019). HP promised consumers that "your computer will have the power and responsiveness to help your productivity soar. Experience amazing gaming performance, seamlessly edit and share 360 video, and enjoy fantastic 4K Ultra HD entertainment." *HP ENVY - 13-ah1031tx Product Page*, HP.com, *available at* https://store.hp.com/sg-en/default/laptops-tablets/hp-envy-13-ah1031tx-5hz24pa.html (last accessed July 20, 2019).

14.     Based on Defendants' representations, Customers who purchased Class Laptops paid a premium for computers that performed substantially worse than advertised and were unsuitable for uses that require a more powerful GPU.

15.     In March of 2018, NotebookCheck.com published an article showing that there are actually "two distinct versions of the GeForce MX150 with wide performance differences and power demands." The second version is notably slower and less demanding than the 'standard' MX150 . . . ." Allen Ngo, *NVIDIA has been sneaking in slower GeForce MX150 '1D12' variant onto some Ultrabooks*, NotebookCheck.com (March 19, 2018), https://www.notebookcheck.net/NVIDIA-has-been-sneaking-in-slower-GeForce-MX150-1D12-variant-onto-some-Ultrabooks.289358.0.html.

16.     The Slowed MX150 performs substantially worse than the Standard MX150, with "a significant performance drop of about 20 to 25 percent between the two versions of the MX150." The base clock rate (a measure of processing speed) of the Slowed MX150 is "36 percent slower" than the Standard MX150, and "[r]aw graphics performance is unsurprisingly faster" on laptops containing the Standard MX150. *Id.*

17.     Although NVIDIA claimed the MX150 would perform 33 percent better than its predecessor, the GeForce 940MX, the Slowed MX150 performs at essentially the same level.

18.     There are two tiers of laptops containing the MX150: those that perform as advertised, and those that do not. The Class Laptops are on the lower end of the latter tier. Laptops containing the Standard MX150 outperform laptops containing the Slowed MX150 by a significant margin.

19.     In tests comparing the performance of the Class Laptops against approximately two dozen laptops containing either the Standard MX150 or the Slowed MX150, the Class Laptops were 20 to 28 percent slower than the fastest laptop (which contained the Standard MX150), and 9 to 17 percent slower than the average of all laptops tested. *Id.*

20.     On information and belief, NVIDIA and HP were aware of the disparity between the two MX150 variants and concealed the fact that the Slowed MX150 was inferior to the Standard MX150.

21.     NVIDIA differentiates between the two variants internally, Nate Oh, *NVIDIA Silently Rolls Out Slower, Lower TDP GeForce MX150 for Ultrabooks*, AnandTech.com (March 23, 2018) https://www.anandtech.com/show/12565/NVIDIA-silently-rolls-out-slower-mx150-for-ultrabooks (last accessed July 20, 2019), and according to analysts there is ample evidence that the Slowed MX150 is "a vendor-side variant undisclosed to consumers." *Id.*

22.     According to a support agent of HP, "the only way to find out [which version of the MX150 is in a computer] is from the computer" as "[t]he information is not available in the product specifications." *Does MX150 in the HP Pavilion15-cs0025cl use N17S-G1-A1 or the N17S-LG-A1?*, HP Community Forum (Nov. 4, 2018), *available at* https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Does-MX150-in-the-HP-Pavilion15-cs0025cl-use-N17S-G1-A1-or/td-p/6887373 (last accessed July 20, 2019).

23.     Because the specification sheet for the Class Laptops simply advertises the MX150 without disclosing that it is referring to the Slowed MX150 variant, consumers who opted for the MX150 upgrade purchased laptops that performed substantially worse than advertised and were unsuitable for many of the uses that would prompt purchasers to opt for the MX150 upgrade in the first place.

24.     To date, the Slowed MX150 variant has been found only in ultrabook laptops, and only in the 13-inch versions (typically the smallest size) of those laptops.

25.     On information and belief, NVIDIA designed the Slowed MX150 to be better suited to the physical limitations of the smallest laptop computers.

26.     This arrangement allowed NVIDIA to sell more GPUs and HP to market the Class Laptops to consumers who need a high-performing GPU despite the fact that the Class Laptops are unsuitable for many graphics-intensive uses.

27.     Defendants engaged in a deceptive and misleading marketing campaign to sell computer hardware and laptop computers containing such hardware by advertising such hardware as a single brand with uniform specifications when in fact, the product line consists of two distinct models, with a substantial performance disparity between them. Consumers who purchased laptops containing the inferior hardware received computers that were materially slower than advertised

and unfit for their intended purpose. Defendants' greed-driven scheme is at the expense of consumers across the country and in violation of applicable law.

28.     Through its misleading marketing, Defendants violated the common law of Delaware and Maryland, as well as statutes prohibiting misleading and unfair sales practices across the country.

29.     Plaintiff brings common law warranty and unjust enrichment claims and claims against Defendants under various States' unfair and unlawful trade practices statutes (see Appendix A) and the Maryland Consumer Protection Act ("MCPA"), Md. Code, Com. Law §§ 13-101, *et seq.*

30.     Plaintiff, on his own and on behalf of all others similarly situated, now seeks declaratory relief, rescission or damages, restitution, disgorgement of profits and other equitable remedies, including an injunction enjoining Defendants' methods, acts, and practices as described herein, as well as Plaintiff's reasonable attorneys' fees and expert fees, and any additional relief that this Court determines to be necessary or appropriate to provide complete relief to Plaintiff, the Class, and the Subclass.

## **PARTIES**

31.     Plaintiff Mark Twardzik is an individual who resides in Ellicott City, Maryland. In reliance on Defendants' advertising and marketing, Plaintiff paid $849.99 for an HP Envy 13-AD173CL, including the MX150 upgrade, which he purchased from an online third-party retailer on March 21, 2018.

32.     Defendant HP is a corporation organized under the laws of the State of Delaware, with headquarters located at 1501 Page Mill Road, Palo Alto, California.

33.     HP is an American multinational information technology company that designs, manufactures, markets, distributes, and warrants personal computers and related supplies. HP designed, manufactured, marketed, warranted, distributed, and sold the Class Laptops. HP is a public company listed on the New York Stock Exchange and is a constituent of the S&P 500 Index. It is the world's largest personal computer vendor by unit sales and ranked 58 in the 2018 Fortune 500 list of the largest United States corporations by total revenue.

34.     Defendant NVIDIA is a corporation organized under the laws of the State of Delaware, with headquarters located at 2701 San Tomas Expressway, Santa Clara, California.

35.     NVIDIA is an American technology company that designs, manufactures, markets, distributes, and warrants GPUs for the gaming and professional markets. NVIDIA designed, manufactured, marketed, warranted, distributed, and sold the MX150. The "GeForce" brand of GPUs is its primary product line.

## JURISDICTION AND VENUE

36.     Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2) and (6), this Court has original jurisdiction. The aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs. This is a class action in which at least one member of the Class and Subclass is a citizen of a state other than the states in which Defendants are incorporated and have their principal place of business.

37.     This Court has personal jurisdiction over this action because Defendants HP and NVIDIA are Delaware corporations.

38.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1) because Defendants HP and NVIDIA reside within this District.

39.     Plaintiff is informed and believes, and thereon alleges, that each and every one of the acts and omissions alleged herein were performed by, and/or are attributable to, all Defendants, each acting as agents and/or employees, and/or under the direction and control of each of the other Defendants, and that said acts and failures to act were within the course and scope of such agency, employment and/or direction and control.

## FACTUAL ALLEGATIONS

40.     In 2009, HP launched the Envy line of laptops, including a predecessor to the HP Envy 13.

41.     Defendant NVIDIA launched the MX150 on May 26, 2017. The MX150 succeeded the GeForce 940MX as the company's entry-level option for discrete laptop GPUs. In January 2019, NVIDIA launched the successor to the MX150, the GeForce MX250 (the "MX250").

42.     On information and belief, NVIDIA has also covertly released two versions of the MX250, one performing as advertised and another that is substantially inferior, while again failing to differentiate between the two versions in marketing materials.

43.     In June of 2017, HP released an updated Envy 13 model and first gave consumers the option to upgrade from the computer's integrated GPU by adding the MX150. HP updated the specifications of the Envy 13 in May 2018 but retained the optional MX150 upgrade. HP's most recent refresh of the Envy 13, released April 2019, has phased out the MX150; they now offer customers the option to purchase an MX250 upgrade.

### A.  Graphics Processing Units

44.     As discussed above, a GPU is a specialized computer chip designed to receive visual data from the CPU, process those data into images, and transmit those images to the computer's monitor for display to the user. In contrast, a CPU is a "general purpose" processor.

All else being equal, a GPU is able to process visual data faster than a CPU, meaning that a computer with a GPU is capable of producing smoother and higher quality visuals than a similar computer with no GPU.

45.     The MX150 has a "discrete" GPU with its own memory and processing power that is slotted into the computer motherboard (where the CPU resides) to improve the computer's image processing capabilities. In contrast, an "integrated" GPU is integrated into the motherboard and shares memory and processing power with the CPU. Adding a discrete GPU to a machine increases overall computing resources available to the system and frees computing resources for other tasks by taking over graphics processing from the CPU.

46.     A fast GPU can also improve a number of facets of the user experience.  A powerful GPU will reduce the time needed to process edits to photos and videos and to render animation and video, improve the web browsing experience by rendering webpages faster and helping to ensure that streaming video runs smoothly, and improve the function of the operating system, with certain elements of the graphical user interface becoming smoother and faster. Nicholas Deleon, *Why Even Non-Gamers May Want a Powerful Graphics Card in Their Next Computer*, ConsumerReports.org (August 29, 2018), https://www.consumerreports.org/computers/why-even-non-gamers-may-want-a-powerful-graphics-card/.

47.     A powerful GPU is critical to certain graphics-intensive computer uses such as running video games or virtual- or augmented-reality programs, three-dimensional modeling, and video and image processing. "A good graphics card is the most important part of a gaming PC." Jon Martindale, *The best graphics cards for 2019*, DigitalTrends.com (July 15, 2019), https://www.digitaltrends.com/computing/best-graphics-cards/.

48.     An underpowered GPU can negatively impact the user experience by reducing render speed, display quality, and operating stability. When a GPU is insufficiently powerful to handle a graphics processing task, it can cause visual anomalies such as artifacts, flickering images, and screen stuttering. GPU output may lag, reducing the frame rate and reducing responsiveness to user input, or the GPU may even crash. The reduced framerate, stuttering, and lag caused by an underpowered GPU can render a video game or other graphics-intensive program unusable.

49.     The power of a GPU is directly tied to its hardware specifications. The primary element is the core clock speed, which is the operating frequency of the processing chip found on the GPU. Due to variances in GPU architecture, two GPUS with the same clock speed will not necessarily perform the same job in the same amount of time. However, assuming all else is equal, a higher clock speed GPU will always be faster than a lower clock speed GPU.

50.     Many GPUs are capable of "overclocking," or increasing the baseline clock speed beyond the core clock speed. Some users choose to manually overclock their GPUs, and some newer GPUs include a "boost" feature that automatically temporarily overclocks the clock speed when additional graphics processing power is needed.

51.     Generally, higher clock speeds require more power and generate more heat. Power supply and heat dissipation requirements are factors that impact the design and function of a GPU and are also limitations that computer designers and OEMs consider in connection with implementing a GPU into a computer.

52.     Other important elements impacting GPU power include the amount of memory available to the GPU and the speed at which the GPU can access and retrieve data from that memory. The more quickly a GPU can retrieve the data, the less time it takes to perform an operation. Thus, more powerful GPUs have faster memory access.

**B.  The Two Tiers of MX150**

53.     Although they were uniformly marketed, there is a wide gap between the performance capabilities of the two MX150 variants.

54.     In March 2018, NotebookCheck.com published an article showing that there are actually "two distinct versions of the GeForce MX150 with wide performance differences and power demands." The second version is notably slower and less demanding than the 'standard' MX150 . . . ." Allen Ngo, *NVIDIA has been sneaking in slower GeForce MX150 '1D12' variant onto some Ultrabooks*, NotebookCheck.com (March 19, 2018), https://www.notebookcheck.net/NVIDIA-has-been-sneaking-in-slower-GeForce-MX150-1D12-variant-onto-some-Ultrabooks.289358.0.html.

55.     The Slowed MX150 performs substantially worse than the Standard MX150, with "a significant performance drop of about 20 to 25 percent between the two versions of the MX150." The reduced performance of the Slowed MX150 is reflected in its power consumption: it consumers 60 percent less power (10 watts to the 25 watts of the Standard MX150). *Id.*

56.     By the most important metrics, the Slowed MX150 substantially underperforms the Standard MX150. In comparison with the Standard MX150, the core clock rate of the Slowed MX150 is 36 percent slower, the boosted clock rate is approximately 32 percent slower, and the memory access rate is approximately 17 percent slower. As a result, "[r]aw graphics performance is unsurprisingly faster" on laptops containing the Standard MX150. *Id.*

57.     In tests comparing the performance of the Class Laptops against approximately two dozen laptops containing either the Standard MX150 or the Slowed MX150, the Class Laptops were 20 to 28 percent slower than the fastest laptop (which contained the Standard MX150), and 9 to 17 percent slower than the average of all laptops tested. Allen Ngo, *NVIDIA has been sneaking*

*in slower GeForce MX150 '1D12' variant onto some Ultrabooks*, NotebookCheck.com (March 19, 2018), https://www.notebookcheck.net/NVIDIA-has-been-sneaking-in-slower-GeForce-MX150-1D12-variant-onto-some-Ultrabooks.289358.0.html.

58.     NVIDIA designed the MX150 for use in laptop computers.

59.     In contrast with a desktop computer, a laptop computer has significantly restricted power supply and heat dissipation capacity. All else being equal, these issues grow more pronounced as a laptop shrinks in size.

60.     Many OEMs incorporate the MX150 into their laptops (or offer it as an optional upgrade), and there are dozens of laptop models containing the MX150. To date, the Slowed MX150 variant has been found only in ultrabook laptops, and only in the 13-inch versions (typically the smallest size) of those laptops. *See id.*

61.     On information and belief, NVIDIA designed and/or programmed the Slowed MX150 to satisfy the more stringent power supply and heat dissipation requirements of the smaller 13-inch ultrabook laptop models, including the Class Laptops.

62.     Larger versions of the HP Envy use the Standard MX150.

63.     On information and belief, HP incorporated the Slowed MX150 into the smaller Class Laptops precisely because the slower version needs less power and has a lower clock speed (and therefore reduced heat output) than the Standard MX150.

### C.   Defendants' Marketing of the MX150 and the Class Laptops was Misleading and Deceptive

64.     Neither Defendant acknowledges in its marketing materials that there are two classes of MX150 separated by a large performance gap. Instead, both Defendants marketed the MX150 as though it would perform to the manufacturer's specifications in all implementations,

despite knowing that the Slowed MX150 was approximately 25 percent slower than the Standard MX150.

65.     HP marketed the Class Laptops as being "exceptionally powerful," with "[i]ncredible speed," and claimed that "the latest Intel® Core™ i processor[2] (optional NVIDIA® GeForce® MX150 graphics) combine for unbridled performance that overpowers even the most demanding tasks." *HP ENVY - 13-ad173cl (1KT13UA) Datasheet*, *available at* https://pcb.itcs.hp.com/dc/api/spec-sheet/ww-en/18021530/pdf/1KT13UA.pdf (last accessed July 20, 2019). HP promised consumers that "your computer will have the power and responsiveness to help your productivity soar. Experience amazing gaming performance, seamlessly edit and share 360 video, and enjoy fantastic 4K Ultra HD entertainment." *HP ENVY - 13-ah1031tx Product Page*, HP.com, *available at* https://store.hp.com/sg-en/default/laptops-tablets/hp-envy-13-ah1031tx-5hz24pa.html (last accessed July 20, 2019).

66.     NVIDIA similarly touted the speed and performance boost offered by the MX150, claiming that it offered "up to 3x superior performance-per-Watt" and approximately 33 percent better performance in various computing activities over its predecessor, the GeForce 940MX. Andrew Burnes, *Introducing GeForce MX150 Laptops: Supercharged For Work and Play*, NVIDIA.com (May 25, 2017), https://www.NVIDIA.com/en-us/geforce/news/NVIDIA-geforce-mx150-laptops//.

67.     On its website, NVIDIA claims that the "MX150 supercharges your laptop for work and play. Get up to 4X faster performance over integrated graphics for photo and video-editing applications, as well as faster, smoother gaming." *GeForce® MX150 Dedicated Graphics for Laptops*, GeForce.com, *available at* https://www.geforce.com/hardware/notebook-gpus/geforce-mx150 (last accessed July 20, 2019).

68.     Plaintiff and the members of the Class and Subclass relied on these representations in making the decision to purchase the Envy 13 and pay a premium for the MX150 upgrade.

69.     This marketing misled Plaintiff and the members of the Class and Subclass by omitting the fact that the Slowed MX150 in the HP Envy 13 would perform materially worse than advertised and render the Class Laptops unfit for their common intended uses (e.g., running video games and virtual reality software).

70.     While the Standard MX150 outperforms its predecessor in line with NVIDIA's claims, the Slowed MX150 offers essentially the same performance as its GeForce 940MX.

71.     Similarly, because the Slowed MX150 possess approximately 25 percent less power than its standard counterpart, it does not offer "4X faster performance" over the Envy 13's base model integrated GPU.

72.     Contrary to Defendants' promises of "amazing gaming performance" and "faster, smoother gaming," the Slowed MX150 possesses insufficient power to play many modern video games or run virtual reality software without screen stuttering and other visual interruptions that render the Class Laptops unusable for such purposes.

73.     The performance disparity between the two variants is not mentioned in marketing materials or packaging of the MX150 or the laptop computers containing the Slowed MX150, including the Class Laptops.

74.     On information and belief, NVIDIA and HP were aware of the disparity between the two MX150 variants and concealed the fact that the Slowed MX150 was inferior to the Standard MX150.

75.     NVIDIA differentiates between the two variants internally, with the Standard MX150 bearing internal model number N17S-G1-A1 and the Slowed MX150 bearing internal

model number or N17S-LG-A1. Nate Oh, *NVIDIA Silently Rolls Out Slower, Lower TDP GeForce MX150 for Ultrabooks*, AnandTech.com (March 23, 2018) https://www.anandtech.com/show/12565/NVIDIA-silently-rolls-out-slower-mx150-for-ultrabooks (last accessed July 20, 2019).

76.     When queried, an MX150 operating within a laptop will identify itself, with the Standard MX150 showing a PCI ID of "10DE 1D10" and the Slowed MX150 showing a PCI ID of "10DE 1D12." *Id.*

77.     The two variants were each certified for use with the Ubuntu operating system, with the Standard MX150 variant referred to as the GP108 and the Slowed MX150 referred to as the GP108M. *Id.*

78.     According to analysts, "the different PCI IDs and certifications suggest that this is a vendor-side variant undisclosed to consumers." *Id.*

79.     According to a support agent of HP, "the only way to find out [which version of the MX150 is in a computer] is from the computer" as "[t]he information is not available in the product specifications." *Does MX150 in the HP Pavilion15-cs0025cl use N17S-G1-A1 or the N17S-LG-A1?*, HP Community Forum (Nov. 4, 2018), *available at* https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Does-MX150-in-the-HP-Pavilion15-cs0025cl-use-N17S-G1-A1-or/td-p/6887373 (last accessed July 20, 2019).

80.     Because NVIDIA does not disclose the difference between the two MX150 variants, and the HP specifications for the Class Laptops do not disclose that they contain the Slowed MX150 variant, Plaintiff and the members of the Class and Subclass unknowingly purchased laptops that performed materially worse than Defendants' marketing led them to expect.

### D. Plaintiff's Experience

81.     Prior to making his purchase, Plaintiff saw the HP Envy 13 promoted on Slickdeals.net, a third-party website.

82.     Subsequently, Plaintiff researched the Class Laptops by comparing the results of various performance benchmark tests posted to the web by third-party reviewers.

83.     Based on the test results and other reviews of the Class Laptops, Plaintiff believed that the MX150 was a valuable addition to the HP Envy 13, with performance comparable to the NVIDIA GeForce GTX 1050, an "upper mainstream GPU" that could play games from 2016 "in high settings a[t] the full HD resolution." Klaus Hinium, *NVIDIA GeForce GTX 1050 Mobile*, notebookcheck.net, (Jan. 12, 2017), *available at* https://www.notebookcheck.net/NVIDIA-GeForce-GTX-1050-Notebook.178614.0.html.

84.     The inclusion of the MX150 was a factor in Plaintiff's purchase, as he was looking for the smallest laptop with the highest performing GPU to be used primarily for entertainment while traveling. He intended to use the laptop for video games and virtual- and augmented-reality experiences.

85.     In reliance on Defendants' misleading marketing, Plaintiff purchased an HP Envy 13 with the MX150 upgrade online from a third-party retailer adorama.com on March 21, 2018. At all times relevant hereto, Plaintiff used the computer for its intended purpose.

86.     Nevertheless, his experience with the HP Envy 13 was marred by GPU-related issues like frame rate drops and stuttering during graphics-intensive operations like gaming, displaying high resolution "4K" content, and running virtual reality programs.

87.     Plaintiff was not aware of the discrepancy between the Standard MX150 and the Slowed MX150, or that his computer contained the Slowed MX150, until June 2018.

88.     Plaintiff would not have purchased his Class Laptop if he had known that it contained the Slowed MX150. Instead, he would have opted for a laptop with an integrated GPU manufactured by NVIDIA's competitor, Advanced Micro Devices.

89.     Other users have relayed similar experiences on HP's online forum. *See*, *e.g.*, Mhz250, *HP envy 13 stuttering problem on every games even using the lowest graphic setting*, HP Community (April 229, 2018), https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/HP-envy-13-stuttering-problem-on-every-games-even-using-the/td-p/6676101 (last accessed July 20, 2019) ("i facing stuttering issue in every games i played(even using the lowest graphic setting) . . . ive tried many steps to overcome the issue,but all failed . . . "); and HP Community, *Hp envy 13 NVIDIA mx150 (REALLY Bad performance on NVIDIA graphics )* (April 16, 2018), *available at* https://h30434.www3.hp.com/t5/Notebook-Video-Display-and-Touch/Hp-envy-13-NVIDIA-mx150-REALLY-Bad-performance-on-NVIDIA/td-p/6662106 ("Today I just had response from HP, so denied this problem and say the. Computer don't have any problem, when clearly he was, so even in warranty HP refuse to repair the problem, so careful with companies like HP, they don't assume responsibility with problems from their computers.")

90.     HP's online forum is rife with reports from multiple users that the Slowed MX150 underperforms or barely exceeds the speed of the base model's integrated GPU, rendering many video games unplayable. HP Community, *Laptop GPU (MX150) not working as well as it should be (and did before)!*, *available at* https://h30434.www3.hp.com/t5/Notebook-Hardware-and-Upgrade-Questions/Laptop-GPU-MX150-not-working-as-well-as-it-should-be-and-did/td-p/6575041 (last accessed July 20, 2019) (containing statements from various Class Laptop owners, including "The GPU is somehow worse than the intel 620 UHD," "i have the same problem,nvidia

graphics no more  than 15fps on game," "run userbenchmark test from userbenchmark.com and the result is: Intel UHD scored 18, and NVIDIA MX150 scored 14. . . . During the benchmark test, I noticed that the graphic is smoother on Intel card.").

## CLASS ALLEGATIONS

91.     Plaintiff incorporates and re-alleges each and every preceding paragraph as if fully set forth herein.

92.     Plaintiff brings this action on behalf of himself and the members of the proposed Class and Subclass. The proposed Class consists of:

> All individuals residing in the United States who, from the first launch date of the Class Laptops in June 2017 purchased an HP laptop computer containing the Slowed MX150.

93.     The proposed Subclass consists of:

> All individuals residing in the State of Maryland who, from the first launch date of the Class Laptops in June 2017 purchased an HP laptop computer containing the Slowed MX150.

94.     Excluded from the Class and Subclass are each Defendant, its parents, subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, as well as their immediate family members, and all customers who make a timely election to be excluded.

95.     Plaintiff reserves the right to alter the Class and Subclass definitions as he deems necessary at any time to the full extent that the Federal Rules of Civil Procedure, the Local Rules of the U.S. District Court for the District of Delaware, and applicable precedent allow.

## Federal Rule of Civil Procedure (FRCP) Rule 23

96.     Certification of the proposed Class and Subclass is appropriate because individual Class and Subclass members can prove the elements of their claims on a class-wide basis using the same evidence they would use to prove those elements through individual litigation.

97.     **Numerosity: Rule 23(a)(1):** The members of the Class and Subclass are so numerous that joinder is impractical. The Class and Subclass consist of thousands of members, the precise number of which is within the knowledge of and can be ascertained only by review of Defendants' records.

98.     **Commonality and Predominance: Rules 23(a)(2) and 23(b)(3):** Numerous questions of law and fact common to the Class and Subclass predominate over any questions affecting only individual members of the Class and Subclass. All Class and Subclass members were exposed to both Defendants' deceptive marketing practices concerning the Class Laptops and the MX150. At the time that Class and Subclass members purchased the Class Laptops, Defendants held exclusive knowledge of the performance disparity between the two variants of the MX150 and the fact that the Class Laptops would contain the Slowed MX150.

99.     Among the questions of law and fact common to the Class and Subclass are:

A.  Whether Defendants engaged in unfair, unlawful and/or fraudulent business practices;

B.  Whether Defendants mispresented and/or failed to disclose material facts.

C.  Whether Defendants made false or misleading statements of fact;

D.  Whether Defendants' return policy foreclosed the possibility of refunds for the Class Laptops;

E.  Whether Defendants' conduct, as alleged herein, was intentional and knowing;

F.  Whether Class and Subclass members are entitled to damages and/or restitution, and in what amount;

G.  Whether Class and Subclass members are entitled to rescission;

H.  Whether an injunction is necessary; and

I.  Whether Plaintiff and Class and Subclass members are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and cost of suit.

100.  **Typicality: Rule 23(a)(3):** Plaintiff's claims are typical of the claims of the members of the Class and Subclass. All Class and Subclass members were subject to Defendants' uniform misleading and marketing practices. Plaintiff has no antagonistic interest to any other member of the Class and Subclass.

101.  **Adequacy: Rule 23(a)(4):** Plaintiff is an adequate representative who willfully and adequately asserts and protects the interests of the Class and Subclass.  Plaintiff's counsel have substantial experience and success in the prosecution of complex class action and consumer protection litigation.

102.  **Superiority: Rule 23(b)(3):** Adjudication of this lawsuit as a class is superior to any other available means because individual litigation of the claims of all members of the Class and Subclass is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class and Subclass are in the millions of dollars, the individual damages incurred by each member of the Class and Subclass resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class and Subclass members prosecuting their own separate claims is remote, and even if every member of the Class and Subclass could afford individual adjudication, the court system would be unduly burdened by such cases.

103.  Prosecuting separate actions by Class and Subclass members would create the risk of establishing inconsistent standards of conduct for Defendants. Individual actions may be dispositive of the interests of the Class and Subclass, even if certain Class and Subclass members are not parties to such actions.

104.    **Declaratory and Injunctive Relief: Rule 23(b)(2):** Defendants acted or refused to act on grounds generally applicable to Plaintiff and the members of the Class and Subclass, thereby final injunctive relief and declaratory relief is appropriate with respect to the Class and Subclass.

105.    **Issue Certification: Rule 23(c)(4)**: Plaintiff also satisfies the requirements for maintaining a class action under Rule 23(c)(4).  His claims consist of particular issues that are common to all Class and Subclass members and are capable of class-wide resolution that will significantly advance the litigation.

**FIRST CLAIM FOR RELIEF**
**False Advertising/ Violation of the Deceptive and**
**Unfair Prongs of Deceptive Trade Practice Statutes**
**(On Behalf of the Class against all Defendants)**

106.    Plaintiff repeats and re-alleges each and every allegation contained above as if set forth herein.

107.    Defendants' actions, representations and conduct have violated, and continue to violate the Delaware Consumer Fraud Act and similar laws of other states, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

108.    Plaintiffs and members of the Class are "consumers" under their states' unfair and deceptive practices statutes, which are identified with specificity for this count in Appendix A.[1]

---

[1] On or about February 3, 2020, Defendants were provided notice pursuant to Cal. Civ. Code § 1782, subdivision (a)(1) of violations of the CLRA, "including but not limited to Cal. Civ. Code §1770(a), subsections 5, 7, 9, and 14, in connection with the marketing and/or sale of the Class Laptops by refusing to  send notice to him and all purchasers and owners of the HP Envy 13 laptop computers that a defect in HP Envy 13 laptop computers exists and was known to but not disclosed by Nvidia; reimburse Plaintiff and the Class Members for the costs of a replacement computer; and reimburse Plaintiff and the Class Members for the reduced or diminished value of

109.    The Class Laptops that Plaintiff and members of the Class purchased are "goods" within the meaning of these states' unfair and deceptive practices statutes.

110.    The Slowed MX150s are "goods" within the meaning of these states' unfair and deceptive practices statutes.

111.    Defendants knew that the Class Laptops and Slowed MX150s would be purchased by consumers and developed the products for consumers' benefit. Defendant knew that the products would be sold by retailers for the ultimate use by consumers. Accordingly, direct privity is not required to bring this cause of action.

112.    Defendants engaged and continue to engage, in unfair, unlawful, and deceptive trade practices in Delaware, Maryland, and other states by engaging in the unfair, unlawful, and deceptive business practices outlined herein. Specifically, Defendants marketed and sold the Class Laptops and/or the Slowed MX150 in a manner that concealed from Plaintiff and the Class the inferior nature of the Slowed MX150 and its impact on the graphics capabilities and value of the Class Laptops.  Plaintiff alleges Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in the various state statutes:

A.  Defendants' acts and practices constitute misrepresentations that the Class Laptops and/or the Slowed MX150 had characteristics, uses, or benefits that it does not have;

B.  Defendants misrepresented that the Class Laptops and/or the Slowed MX150 had a particular standard, quality, and grade when it did not;

C.  Defendants' acts and practices constitute the advertisement of goods and/or services without the intent to sell them as advertised; and/or

D.  Defendants made material omissions.

---

the computer(s). On or about February 27, 2020, Defendants, through counsel, declined to resolve the dispute.

113.     Defendants' acts and omissions are unfair in that they (1) offend public policy; (2) are immoral, unethical, oppressive, or unscrupulous; and (3) cause substantial injury to consumers.

114.     Defendants' acts and omissions are also unfair in that they caused injury to consumers far more than any conceivable benefit, and are injuries of a nature that they could not have been reasonably avoided by consumers.

115.     Until the present, Defendants have knowingly accepted the benefits of its unfair and unlawful conduct in the form of profits from the sale of the Class Laptops.

116.     As a result of the unfair and unlawful acts described herein, Plaintiff and members of the Class purchased the Class Laptops when they would not otherwise have done so and suffered economic losses.

117.     Plaintiff and Class Members relied to their detriment on Defendants' unfair, unlawful, and deceptive business practices. Had Plaintiff and Class Members been adequately informed rather than intentionally deceived by Defendants, each would have acted differently by, without limitation, not purchasing the Class Laptops.

118.     Plaintiff and the Class suffered ascertainable loss and actual damage as a direct and proximate result of Defendants' concealment, misrepresentations, and omissions of material information.

119.     On information and belief, Defendants will continue to commit the foregoing acts and omissions, unless the Court orders Defendants to cease and desist.

120.     By reason of the foregoing, Plaintiff and the Class have been irreparably harmed and thus seek an order enjoining Defendants' methods, acts, or practices; actual damages; restitution; punitive damages; rescission; court costs and attorneys' fees; and any other relief that this Court deems proper.

**SECOND CLAIM FOR RELIEF**
**Equitable Injunctive and Declaratory Relief**
**(On Behalf of the Subclass against HP)**

121.    Plaintiff repeats and re-alleges each and every allegation contained above as if set forth herein.

122.    HP is under a continuing duty to inform its customers of the disparity between the two types of MX150 used in its laptops.

123.    Plaintiff, members of the Subclass, and the public will suffer irreparable harm if HP is not ordered to offer rescission to the Maryland Sub-Class by repurchasing their Class Laptops for their full cost, and to cease and desist from marketing, advertising, selling, and leasing the Class Laptops.

124.    Such irreparable harm includes but is not limited to likely injuries as a result of the defects to the Class Laptops.

**THIRD CLAIM FOR RELIEF**
**Violation of the Maryland Consumer Protection Act**
**Md. Code Ann., Commercial Law § 13-101, et seq.**
**(On Behalf of the Subclass against all Defendants)**

125.    Plaintiff repeats and re-alleges each and every allegation contained above as if set forth herein.

126.    Plaintiff brings this claim individually and on behalf of the Subclass.

127.    Plaintiff and Subclass members who purchased Class Laptops containing the Slowed MX150 are "consumers" under MCPA.

128.    The Class Laptops and Slowed MX150 are consumer goods within the meaning of the MCPA.

129.    The MCPA prohibits the use of any "unfair or deceptive trade practice" in the sale or lease of any consumer goods or services.

130. Defendants violated the MCPA by, *inter alia*, engaging in the following unfair, deceptive acts or practices:

    A.    Failing to disclose material facts that deceived and had the tendency to deceive; and

    B.    Engaging in deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the promotion or sale of consumer goods or services.

131. Defendants violated the MCPA by concealing, suppressing or omitting material facts regarding the Slowed MX150 and the Class Laptops, including, but not limited to, the fact that the Slowed MX150 does not perform as advertised, rendering the Class Laptops unsuitable for graphics-intensive operations such as running video games and virtual reality software. This concealed or omitted information is the type of information upon which a consumer would be expected to rely on in making a decision whether to purchase or how much to pay for, the Slowed MX150 and the Class Laptops.

132. Defendants concealed, suppressed or omitted these material facts in conducting trade and commerce with the intent that Plaintiff and the Subclass would rely on the omissions in the purchase of their Class Laptops.

133. To this day, Defendants continue to violate the MCPA by actively concealing the material information about the Class Laptops and the Slowed MX150 and by representing to Plaintiff and members of the Subclass that the Class Laptops and the Slowed MX150 perform better than they in fact do and are suitable for certain uses for which they are not suited.

134. Defendants intended that Plaintiff and the Subclass members would rely on their concealment and omission of material facts, which occurred in the course of conduct involving trade and commerce.

135.    Defendants' practices, acts, policies and course of conduct violated MCPA's prohibition on unfair and deceptive conduct in that:

A.    At the time of sale, Defendants knowingly and intentionally omitted and concealed material information regarding the Class Laptops by failing to disclose to Plaintiff and Subclass members the less powerful capabilities of the Slowed MX150 and its impact on the performance of the Class Laptops.

B.    Thereafter, Defendants failed to disclose these facts to Plaintiff and the Subclass members, through warnings or other notices, and/or actively concealed from them that the Slowed MX150 would not perform as advertised, even though the companies knew that: (1) at the time of manufacture, because NVIDIA designed and/or programmed the Slowed MX150 to be inferior to the Standard MX150; (2) from complaints to web forums actively monitored by Defendants; (3) when, on information and belief, HP incorporated the Slowed MX150 into the Class Laptops to satisfy physical design constraints.

C.    Based on these and, upon information and belief, other internal studies and investigations, Defendants knew with certainty that the Class Laptops would include the inferior Slowed MX150 and that the Class Laptops would perform substantially worse than advertised and be unsuitable for some uses.

D.    Furthermore, Defendants engaged in materially misleading and deceptive acts by continuing to sell the Class Laptops and Slowed MX150 to the consuming public and to represent that they were in good working order, merchantable, and performed as advertised, despite Defendants' knowledge that they would not perform as intended, represented, and warranted.

136.    Defendants' acts and omissions are unfair in that they (1) offend public policy; (2) are immoral, unethical, oppressive, or unscrupulous; and (3) cause substantial injury to consumers. Defendants have, through knowing, intentional, material omissions, concealed the true inferior nature of the Class Laptops, and Slowed MX150.

137.    Defendants' acts and omissions are also unfair in that they cause substantial injury to consumers far in excess of any conceivable benefit; and are injuries of a nature that could not have been reasonably avoided by consumers.

138.    As a direct and proximate result of these unfair acts or practices, Plaintiff and Subclass members have been damaged because they purchased Class Laptops they otherwise would not have, paid more for Class Laptops than they otherwise would have, paid for diagnoses, repairs, and replacements, paid for software that was not able to satisfactorily run on the Class Laptops, and are left with Class Laptops of diminished value and utility. Meanwhile, NVIDIA and the other Defendants have sold more MX150s and Class Laptops, respectively, than they otherwise could have, and HP has charged inflated prices for Class Laptops, thereby unjustly enriching itself.

139.    Plaintiff and members of the Class also seek appropriate equitable relief, including an order requiring Defendants to adequately disclose and remediate the issue by offering purchasers of the Class Laptops rescission and a full refund, and an order enjoining Defendants from engaging in misleading marketing with respect to the Slowed MX150 or a similar GPU (*e.g.,* the slower variant of the MX250) in the future.

### FOURTH CLAIM FOR RELIEF
**Deceit and Fraudulent Concealment**
**(On Behalf of the Class against all Defendants)**

140.    Plaintiff repeats and re-alleges each allegation contained above as if set forth herein.

141.    Plaintiff asserts this claim on behalf of the Class.

142.    Defendants made false representations concerning the performance and quality of the Slowed MX150 and the Class Laptops, and the quality of the Defendants' brands. Further, Defendants concealed and suppressed material facts concerning the performance and quality of the Slowed MX150 and the Class Laptops and the quality of the Defendants' brands. Defendants knew, or in the exercise of reasonable diligence should have known, of the inferior performance of the Slowed Laptops, but failed to disclose these facts prior to or at the time they marketed the Slowed MX150 and the Class Laptops and sold them to consumers. Defendants engaged in this concealment in order to increase sales of the MX150 and the Class Laptops.

143.    Plaintiff and Class members had no reasonable way of knowing that Defendants' representations were false and misleading, or that Defendants had omitted to disclose highly important details relating to the performance of the Slowed MX150 and the Class Laptops. Plaintiff and Class members did not and could not reasonably discover Defendants' deception on their own.

144.    Defendants had a duty to disclose the true performance of the Slowed MX150 and the Class Laptops because the scheme and its details were known and accessible only to Defendants; Defendants had superior knowledge and access to the relevant facts; and Defendants knew these facts were neither known to, nor reasonably discoverable by, Plaintiff and the Class members. Defendants also had a duty to disclose the inferior nature of the Slowed MX150 and the Class Laptops because they made many general, partial representations about the qualities of the Slowed MX150 and the Class Laptops.

145.    Defendants still have not made full and adequate disclosures and continue to defraud consumers by concealing material information regarding the true performance of Slowed MX150 and the Class Laptops.

146.    Plaintiff and Class members were unaware of the omitted material facts and would not have acted as they did, in that they would not have paid for optional upgrades and/or purchased the Class Laptops, had they known of the facts Defendants suppressed. Plaintiff and Class members' actions in purchasing Class Laptops were justified. Defendants were in exclusive control of the material facts and such facts were not reasonably known to the public, Plaintiff, or Class members.

147.    Plaintiff and Class members relied to their detriment upon Defendants' representations, fraudulent misrepresentations, and material omissions regarding the performance of Slowed MX150 and the Class Laptops in deciding to purchase their Class Laptops.

148.    Plaintiff and Class members sustained damage as a direct and proximate result of Defendants' deceit and fraudulent concealment. Among other damages, Plaintiff and Class members did not receive the value of the premium price they paid for their Class Laptops. Plaintiff and Class members would not have purchased Class Laptops had they known of the inferior nature of the Slowed MX150.

149.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights and well-being, to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

<u>**FIFTH CAUSE OF ACTION**</u>
**Unjust Enrichment**
**(On Behalf of the Class and Subclass against all Defendants)**

150.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint to the extent not inconsistent with the claims asserted in this Count.

151.    This claim is asserted in the alternative on behalf of Plaintiff and the members of the Class and Subclass to the extent that there is any determination that Plaintiff does not have standing to assert any contractual claims asserted against any Defendants on the alleged basis of absence of contractual privity or otherwise.

152.    By its wrongful acts and omissions described herein, including misleading consumers with respect to the Slowed MX150, NVIDIA was unjustly enriched at the expense of Plaintiff and the Class and Subclass.

153.    By its wrongful acts and omissions described herein, including misleading consumers with respect to the Class Laptops, HP was unjustly enriched at the expense of Plaintiff and the Class and Subclass.

154.    Plaintiff and the Class and Subclass members conferred a benefit upon NVIDIA and HP by purchasing the Class Laptops at a premium price for an ultrabook laptop suitable for graphics-intensive operations such as gaming, virtual reality, and video processing.

155.    Defendants knew that the Class and Subclass members were purchasing the inferior Class Laptops for these uses and still accepted the sum contemplated for an ultrabook laptop suitable for graphics-intensive operations such as gaming, virtual reality, and video processing.

156.    Under the circumstances, it would be inequitable for Defendants to retain the profits, benefits, and other compensation obtained through their wrongful conduct in manufacturing, marketing and selling to Plaintiff, the Class, and Subclass the Class Laptops containing the Slowed MX150, which is unsuitable for graphics-intensive operations. Natural justice and equity require that Plaintiff and the Class and Subclass recover under the circumstances.

157.    Plaintiff, on behalf of himself and all others similarly situated, seeks restitution from Defendants, and an order of this Court proportionally disgorging all profits, benefits, and other compensation wrongfully obtained by Defendants from their conduct.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of himself and the Class and Subclass members, respectfully requests that the Court:

A.  Certify this case as a class action pursuant to Federal Rule of Civil Procedure Rule 23, as set forth above, and appoint Plaintiff as Class Representative and his counsel as Class Counsel;

B.  Award Plaintiff, Class members and Subclass members appropriate monetary relief, such as actual damages and/or restitution;

C.  Award Plaintiff, Class members and Subclass members equitable, injunctive and declaratory relief as appropriate under the applicable law;

D.  Award Plaintiff and Class members pre-judgment and post-judgment interest as prescribed by law;

E.  Award punitive damages as permitted by law;

F.  Award reasonable attorneys' fees and costs as permitted by law; and

G.  Enter such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.


DATED:  March 18, 2021

*/s/ P. Bradford deLeeuw*
P. Bradford deLeeuw (#3569)
DELEEUW LAW LLC
1301 Walnut Green Road
Wilmington, DE 19807
(302) 274-2180
brad@deleeuwlaw.com

OF COUNSEL:

Nicholas A. Migliaccio
Jason S. Rathod (*pro hac vice* anticipated)
**MIGLIACCIO & RATHOD LLP**
412 H Street NE, 3rd Floor
Washington, DC 20002
Tel: (202) 470-3520/Fax: (202) 800-2730
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

*Attorneys for Plaintiff and the Proposed Class and Subclass*